IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

June 04, 2025 01:47 PM
SCT-Civ-2024-0043
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | |
|---|---|
| **BRUCE W. STREIBICH,** | **S. Ct. Civ. No. 2024-0043** |
| Appellant/Defendant, | Re: Super. Ct. Civ. No. 459/1995 |
| v. | (STT) |
| **CHARLES A. KAPLANEK, III,** | |
| Appellee/Plaintiff, | |
| and | |
| **WARREN STRYKER AND MARGARET STRYKER,** | |
| Appellees/Intervening Plaintiffs, | |
| **ARTHUR SCHMAUDER, ELIZABETH MCGUIRE, AND BLUE WATERS RETREAT, LLC,** | |
| Intervening Defendants.[1] | |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Thomas & St. John
Superior Court Judge: Hon. Renee Gumbs Carty

Argued: April 8, 2025
Filed: June 4, 2025

Cite as: 2025 VI 13

**BEFORE:** **RHYS S. HODGE**, Chief Justice; **HON. MARIA M. CABRET**, Associate Justice; and **HON. HAROLD W.L. WILLOCKS**, Associate Justice.

**APPEARANCES:**

**Carol Ann Rich, Esq. (Argued)**
**Malorie Winne Diaz, Esq.**
Dudley Rich LLP
St. Thomas, U.S.V.I.
    *Attorney for Appellant/Defendant,*

**Matthew J. Duensing, Esq. (Argued)**
**Joseph D. Sauerwein, Esq.**
Law Offices of Duensing & Casner
St. Thomas, U.S.V.I.
    *Attorney for Appellee/Plaintiff and*
    *Appellees/Intervening Plaintiffs.*

---

[1] The intervening defendants in the underlying lawsuit are not parties in this appeal.

*Streibich v. Kaplanek, et al.*
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 2 of 22

2025 VI 13

## OPINION OF THE COURT

**WILLOCKS, Associate Justice.**

¶ 1    Appellant Bruce W. Streibich (hereinafter "Streibich") appeals from the June 25, 2024 order of the Superior Court of the Virgin Islands (hereinafter "Superior Court") holding Streibich in contempt for violating the Superior Court's April 29, 2024 order and declaratory judgment.

### I. BACKGROUND[2]

¶ 2    The lengthy history of this litigation began in June 1995 when Karen R. Underwood (hereinafter "Underwood")[3] filed a complaint against Streibich and Katharine H. Streibich[4] for a declaratory judgment of an easement in connection with Underwood's property located at Parcel No. 4-27, Estate Tabor and Harmony, Nos. 5 & 6 East End Quarter, St. Thomas, U.S. Virgin Islands (hereinafter "Parcel No. 4-27") and Streibich and Katharine H. Streibich's property located at Parcel No. 4-26.[5] The gravamen of the lawsuit was whether an easement exists across Parcel No. 4-26 for the benefit of Parcel No. 4-27. While Underwood referenced several maps in her complaint, of relevance here is the PWD B9-31-T57 map (hereinafter "T57 Map") which depicts the planned subdivision of the property that resulted in, *inter alia*, Parcel Nos. 4-26 and 4-27, and

---

[2] This Court will recite only those facts and procedural history relevant to this instant appeal. To construct a more comprehensive and accurate background, this Court takes judicial notice of other courts' dockets and papers. *See Cianci v. Chaput*, 64 V.I. 682, 690 n.2 (V.I. 2016) (recognizing that courts may take judicial notice of other courts' dockets and papers); *cf. King v. Appleton*, 61 V.I. 339, 348 (V.I. 2014) ("[T]he Superior Court may take judicial notice of the existence of a document that has been filed with it in another proceeding.") (quotation marks and citation omitted).

[3] On March 4, 2022, the Superior Court entered an order in which it found that Underwood's son Charles Anthony Kaplanek, III (hereinafter "Kaplanek") was the real party in interest with respect to Parcel No. 4-27 since "Underwood deeded her interest in the property to him on June 30, 2016, by deed recorded as Document No. 2016004645" and thus, the court substituted Kaplanek in place of Underwood as the plaintiff but ordered that "the original Plaintiff's name shall remain" in the caption. For the sake of clarity and accuracy, this Court will refer to Kaplanek (owner of Parcel No. 4-27) instead of Underwood as the appellee in this appeal to reflect the proper party.

[4] Katharine H. Streibich passed away in February 1999.

[5] Unless otherwise noted, all parcels referenced herein are located at Estate Tabor and Harmony, Nos. 5 & 6 East End Quarter, St. Thomas, U.S. Virgin Islands.

*Streibich v. Kaplanek, et al.*
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 3 of 22

2025 VI 13

a private road system—namely, a marked passage referred to as a right-of-way ("R.O.W.") on the T57 Map (hereinafter "T57 ROW") and three roads labeled as "private roads."

¶ 3     After a prolonged and contentious litigation involving the intervention of multiple adjacent landowners—namely, Warren Stryker and Margaret Stryker (collectively, hereinafter "Strykers") (owners of Parcel No. 4-28) as intervening plaintiffs; Arthur Schmauder (hereinafter "Schmauder"), Elizabeth McGuire (hereinafter "McGuire"), and Blue Waters Retreat, LLC (hereinafter "BWR") (owners of Parcel Nos. 4-22B and 4-25) as intervening defendants—and an interlocutory appeal of the Superior Court's February 25, 2019 order granting the Strykers' motion for partial summary judgment seeking a permanent injunction (SCT-CIV-2019-0038),[6] the Superior Court held a three-day bench trial commencing on April 3, 2023.

¶ 4     On April 29, 2024, the Superior Court entered an order and declaratory judgment (hereinafter "April 29, 2024 Order") in which the court, *inter alia*, ordered: (i) "that injunctive relief and judgment are hereby GRANTED in favor Plaintiffs Karen Renee Underwood and Charles A. Kaplanek III, and Intervening Plaintiffs Warren Stryker and Margaret Stryker"; (ii) "that within the subdivision of Parcel 4, Estate Tabor & Harmony Nos. 5 & 6 East End Quarter, St. Thomas, U.S. Virgin Islands an implied easement exists over Parcel Nos. 4-22B, 4-22A, 4-25, 4-26, 4-27 and terminates at Parcel No. 4-28, based on the findings and conclusions of the

---

[6] Of import here, in the previous appeal, this Court addressed the Strykers' motion for partial summary judgment on their request for a permanent injunction preventing Streibich from blocking their access to an alleged dirt road on his property and held, *inter alia*, that "(1) there is no express easement over the R.O.W. as a matter of law; (2) there is an easement by implication over the R.O.W., but there is a genuine dispute of material fact as to its scope, and it is located where it is depicted on the T57 map and not over the alleged dirt road; and (3) as both parties agree, there is a genuine dispute of fact as to whether an easement by necessity exists." *Streibich v. Underwood*, 74 V.I. 488, 511 (V.I. 2021).

As a result, this Court "affirm[ed] the grant of summary judgment granting Underwood's motion for declaratory judgment of an easement in favor of Parcel Nos. 4-27 and 4-28 as depicted in T57; reverse[d] the grant of summary judgment on the Strykers' motion; and remand[ed] to the Superior Court for further proceedings consistent with this opinion." *Id.*

*Streibich v. Kaplanek, et al.*
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 4 of 22

2025 VI 13

accompanying Memorandum Opinion"; (iii) "that the Plaintiffs and Intervening Plaintiffs are entitled to the unrestrained perpetual vehicular use of the right-of way for the purpose of ingress and egress"; (iv) "that Defendant Bruce Streibich and Intervening Defendants Arthur Schmauder, Elizabeth McGuire, and Blue Waters Retreat, LLC, and their successors in interest SHALL IMMEDIATELY CEASE and are PERMANENTLY ENJOINED from blocking, obstructing, impeding, or preventing in any manner the existing property owners of Parcel No. 4-27 and Parcel No. 4-28 or their successors in interest from traversing over and along the right of way as established upon the PWD B9-31-T57 map and also the estate roads as depicted on PWD F9-741-T61 and PWD C9-47-T62"; (v) "that the Court adopts and incorporates into all deeds now in existence, future deeds, and title of record, survey map Drawing No. 3654-3 as produced by Ryan Wisehart of Brian Moseley and Associates, Inc. which shall be filed with the Government of the Virgin Islands through the Office of the Lieutenant Governor, Recorder of Deeds Office, placing all subsequent purchasers on notice that there is an easement as depicted on T57 and its precise location"; and (vi) "that the file can be closed by the Clerk of the Court."

¶ 5    On May 24, 2024, Streibich filed a timely notice of appeal of the Superior Court April 29, 2024 Order (SCT-CIV-2024-0036), and, thereafter, filed motions to stay pending his appeal in both the Superior Court and in this Court. Separately, on May 24, 2024, Schmauder, McGuire, and BWR jointly also filed a timely notice of appeal of the Superior Court's April 29, 2024 Order (SCT-CIV-2024-0038), and thereafter, also filed motions to stay pending their appeal in both the Superior Court and in this Court. The aforementioned appeals and the motions to stay are all currently pending.

¶ 6    On May 31, 2024, while the appeals and the motions to stay were pending, Kaplanek and the Strykers jointly filed a motion for an order to show cause why Streibich should not be held in

*Streibich v. Kaplanek, et al.*          2025 VI 13
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 5 of 22

contempt and sanctioned for "disobeying . . . the lawful [April 29, 2024] Order." (JA 290). Specifically, Kaplanek and the Strykers claimed that the following conduct by Streibich violated the April 29, 2024 Order: (i) Streibich's parking a vehicle "blocking access to the right-of-way . . . from at least May 15 to May 28, 2024" and (ii) Streibich's May 28, 2024 letter to the Department of Planning and Natural Resources (hereinafter "DPNR") for "premature efforts to obstruct Plaintiffs from seeking DPNR permits . . . and undoubtedly an effort to further impede Plaintiffs' ability to traverse the easement."

¶ 7    On June 14, 2024, the relevant parties appeared before the Superior Court for a hearing on Kaplanek and the Strykers's May 31, 2024 joint motion to show cause.

¶ 8    On June 25, 2024, the court entered an order (hereinafter "Contempt Order") in which the court found "Streibich in civil contempt of court" and ordered as follows: (i) Streibich is "held in CONTEMPT"; (ii) Streibich "is sanctioned for violating the court's Order and Declaratory Judgment entered on April 29, 2024 and fined in the amount of FIVE HUNDRED ($500) DOLLARS payable to the Superior Court of the Virgin Islands, Cashier's office," (ii) Kaplanek and the Strykers' "motion for fees is granted" and that Streibich "shall pay the Law Offices of Duensing & Casner the sum of TWO THOUSAND, TWO HUNDRED ($2,200) DOLLARS,"[7] and (iii) "the fine and attorney's fees shall be paid in full by Monday, July 15, 2024, failing which interest may accrue until payments are satisfied."[8]

¶ 9    On July 8, 2024, Streibich filed a timely notice of appeal of the Contempt Order. On April 8, 2025, Streibich, Kaplanek, and the Strykers appeared before this Court for oral argument.

---

[7] The Law Offices of Duensing & Casner are counsel for Kaplanek and the Strykers.

[8] On July 8, 2024, Streibich filed a notice of compliance advising the court that he paid the monetary sanctions as ordered in the Contempt Order.

*Streibich v. Kaplanek, et al.*
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 6 of 22

2025 VI 13

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

¶ 10    "Prior to considering the merits of an appeal, this Court must first determine if it has appellate jurisdiction over the matter." *Crucians in Focus, Inc. v. VI 4D, LLLP*, 57 V.I. 529, 534 (V.I. 2012) (citing *V.I. Gov't Hosps. & Health Facilities Corp. v. Gov't*, 50 V.I. 276, 279 (V.I. 2008)).

¶ 11    Here, Streibich appeals the Contempt Order in which the Superior Court held him in "civil contempt" for violating the April 29, 2024 Order. "[I]t is well established that a party who is held in civil contempt may not take an immediate appeal unless the civil contempt order was issued in connection with another order that is immediately appealable, such as a preliminary injunction." *Crucians in Focus*, Inc., 57 V.I. at 534 (citing *In re Najawicz*, 52 V.I. 311, 326 (V.I. 2009)).

¶ 12    The April 29, 2024 Order was a permanent injunction—to wit, the Superior Court ordered, *inter alia*, Streibich to "IMMEDIATELY CEASE and [be] PERMANENTLY ENJOINED from blocking, obstructing, impeding, or preventing in any manner the existing property owners of Parcel No. 4-27 and Parcel No. 4-28 or their successors in interest from traversing over and along the right of way as established upon the PWD B9-31-T57 map and also the estate roads as depicted on PWD F9-741-T61 and PWD C9-47-T62"—and thus, the April 29, 2024 Order was immediately appealable. *See* 4 V.I.C. § 33(b)(1) ("The Supreme Court of the Virgin Islands has jurisdiction of appeals from: Interlocutory orders of the Superior Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions."). Additionally, the April 29, 2024 Order was a final order because it effectively adjudicated the entire case on the merits, and thus it was also immediately appealable as a final judgment. *See* 4 V.I.C. § 32(a) ("The Supreme Court shall have jurisdiction over all

*Streibich v. Kaplanek, et al.*     2025 VI 13
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 7 of 22

appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law."); *see also, Sam's Food Distribs., Inc. v. NNA&O, LLC*, 73 V.I. 453, 459 (V.I. 2020) (noting that an order granting a permanent injunction "is a final order under section 32(a)" and that [this Court] ha[s] jurisdiction over the appeal").

¶ 13    Given that Streibich was a party in the underlying lawsuit and the Contempt Order in which the Superior Court held Streibich in "civil contempt" was issued in connection with the immediately appealable April 29, 2024 Order, this Court possesses jurisdiction over Streibich's appeal of the Contempt Order.

¶ 14    However, we "do[] not assume that the trial court has correctly characterized a sanction as either civil or criminal." *East End Taxi Servs., Inc. v. V.I. Taxi Ass'n, Inc.*, 49 V.I. 658, 673 (D.V.I. 2008). Even assuming *arguendo* that the Superior Court mischaracterized the type of contempt sanction in the Contempt Order as civil rather than criminal as argued by Streibich, *see V.I. Taxi Ass'n v. V.I. Port Auth.*, 67 V.I. 643, 676 (V.I. 2017) ("A contempt sanction may be either civil or criminal in nature."), this Court similarly possesses jurisdiction over Streibich's instant appeal because a criminal contempt proceeding is a criminal proceeding independent of the main action and the adjudication therein is a judgment of conviction. *See* V.I. R. CRIM. P. 32(k)(1)(A) ("If the defendant pleaded not guilty and was convicted, after sentencing the court must advise the defendant of the right to appeal the conviction."); *see also,* V.I. APP. R. 5(b)(1) (providing the timeline for a criminal defendant to appeal as of right from a judgment of conviction); *V.I. Taxi Ass'n,* 67 V.I. at 659 ("Because the Superior Court's sanctions contained both punitive and coercive elements, the Appellate Division treated the entire June 13, 2006 sanctions order as a criminal contempt order, over which it could exercise jurisdiction.").

*Streibich v. Kaplanek, et al.*            2025 VI 13
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 8 of 22

¶ 15    In other words, a criminal contempt order of punishment is considered "final" within the meaning of 4 V.I.C. § 32(a) and immediately appealable.[9] *Cf. Potter v. People,* 56 V.I. 779, 787 (V.I. 2012) (noting that in a criminal case, a written judgment containing the adjudication of guilt and the resulting sentence is a final judgment for purposes of 4 V.I.C. § 32(a)); *Browne v. People,* 56 V.I. 207 (V.I. 2012) (same); *Melendez v. People,* 56 V.I. 244 (V.I. 2012) (same); *Union Tool Co. v. Wilson,* 259 U.S. 107, 111 (1922) ("The District Court entered a single order, part remedial, part punitive. Where a fine is imposed partly as compensation to the complainant and partly as punishment, the criminal feature of the order is dominant and fixes its character for purposes of review. If the company had acquiesced in the judgment entered, Wilson, having no right to initiate a review of the punitive part, could not have instituted any appellate proceeding until after final decree. But an order punishing one criminally for contempt, is a final judgment. The contemnor may obtain immediately a review by writ of error.").

¶ 16    Our standard of review in examining the Superior Court's application and construction of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel,* 49 V.I. 322, 329 (V.I. 2007); *In re L.O.F.,* 62 V.I. 655, 661 (V.I. 2015) (citing *In re Reynolds,* 60 V.I. 330, 333 (V.I. 2013)). "However, the Superior Court's decision to hold an individual in contempt is reviewed only for abuse of discretion." *In re Sheesley,* 70 V.I. 1007, 1017 (V.I. 2019); *see also, V.I. Taxi Ass'n,* 67 V.I. at 675 ("In evaluating whether the Superior Court

---

[9] This is further supported by the fact that the Contempt Order was issued post-judgment in the underlying matter. *See, e.g., Consumers Gas & Oil v. Farmland Indus.,* 84 F.3d 367, 370 (10th Cir. 1996) (finding that, because the "district court made a finding of contempt in the 'postjudgment stage' . . . the contempt order is appealable regardless of whether it is more properly characterized as criminal or civil"); *Berne Corp. v. Gov't of the V.I.,* 51 V.I. 1253, 1260 n.10 (3d Cir. 2009) ("Post-judgment orders of contempt are within an appellate court's jurisdiction under 28 U.S.C. § 1291 as final and appealable orders."); *Hilao v. Estate of Marcos,* 103 F.3d 762, 764 (9th Cir. 1996) ("The post-judgment orders of contempt appealed here are within this court's jurisdiction under 28 U.S.C. § 1291 as final and appealable orders.").

*Streibich v. Kaplanek, et al.*
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 9 of 22

2025 VI 13

erred in holding Appellees in contempt, the Appellate Division was required to determine whether the Superior Court abused its discretion.") (citing *In re Moorhead*, 63 V.I. 689, 692 (V.I. 2015) ("[T]he Superior Court's decision to hold an individual in contempt is reviewed only for abuse of discretion.")). "An abuse of discretion arises only when the decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Streibich*, 74 V.I. at 499 (citations omitted).

## B. Overview of Issues

¶ 17    On appeal,[10] Streibich argues that the Superior Court erred by "incorrectly classify[ng] the contempt order and sanction as civil" when the court "applied the incorrect legal standard in ordering a criminal contempt conviction and by labeling a criminal contempt sanction as a civil contempt sanction," and contends that doing so "is grounds [for] vacating the contempt order." More specifically, Streibich argues that the $500 sanction imposed was a criminal contempt sanction— not a civil contempt sanction as the court characterized in the order—but the court "did not hold that the evidence supported a finding that Streibich willfully disobeyed the court order beyond a reasonable doubt."

¶ 18    Streibich further argues that, regardless of whether the sanction was more properly characterized as criminal or civil, the Superior Court "would have erred in entering an order for civil contempt and sanction as well, because the lower standard of clear and convincing evidence was still not met." Additionally, Streibich argues that the Superior Court erred by

---

[10] In his appellant's brief, Streibich listed the following issues raised in this appeal:

1.    Whether the Superior Court Erred By Holding Streibich In Contempt?

2.    Whether the Superior Court Erred By Expanding the Judgment to Prohibit Streibich From Temporarily Parking On His Own Property?

*Streibich v. Kaplanek, et al.*    2025 VI 13
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 10 of 22

"expanding [the April 29, 2024 Order] and eviscerating Streibich's rights as the fee owner of [Parcel No.] 4-26" to temporarily park on his own property.

¶ 19     As such, Streibich concludes that the Contempt Order "must be vacated and exonerated" and "the Superior Court should be ordered to refund the $500 criminal sanction" and "the Appellees should be ordered to refund the $2,200 for legal fees."

¶ 20     In their joint appellees' brief,[11] Kaplanek and the Strykers argue that "the Superior Court clearly rendered a civil contempt judgment" and that to the extent Streibich "mischaracterizes his contempt proceeding as criminal rather than civil in an attempt to create error . . . [such an argument] is without evidence." Kaplanek and the Strykers further argue that the evidence supports a judgment of civil contempt. Additionally, they also argue that Streibich "appears to misunderstand the burden/benefit relationship of easements [when he] argues that he 'parked his car on his own property'" because "[i]t is well settled that this fact does not change the analysis; the nature of this easement is that it does, in fact, burden his property and dictate how others can use the easement."

¶ 21     Therefore, Kaplanek and the Strykers conclude that the Superior Court did not abuse its discretion in holding Streibich in civil contempt and that this Court should affirm the Contempt Order. Nevertheless, they argue "[i]n the alternative, [that] if this Court should decide that the Superior Court should have proceeded under the criminal contempt standard, then this Court should remand this matter for further proceedings consistent with its opinion."

---

[11] In their joint appellees' brief, Kaplanek and the Strykers stated:

> The overarching issue on appeal is whether the Superior Court erred in holding Appellant Streibich in civil contempt. To determine the overarching issue, this Supreme Court must determine (1) whether Appellant violated the Superior Court's Order and, if so, (2) whether the Superior Court abused its discretion in fining Appellant.

*Streibich v. Kaplanek, et al.*
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 11 of 22

2025 VI 13

¶ 22    In his reply brief, Streibich reiterates his argument that the Contempt Order "must be vacated and exonerated" and the sanction and legal fees refunded back to him because "[t]he Superior Court erred when it, in effect, held Streibich in criminal contempt without proof beyond a reasonable doubt of a willful and knowing violation of a court order, and further, [that] the evidence did not support a finding of civil contempt."

### C. Whether the Superior Court Erred by Holding Streibich in Contempt

¶ 23    In the Contempt Order, the Superior Court imposed two monetary contempt sanctions against Streibich: one for $500 payable to the Superior Court of the Virgin Islands, Cashier's Office, and another for $2,200 payable to the Law Offices of Duensing & Casner.

¶ 24    As noted above, "[a] contempt sanction may be either civil or criminal in nature." *V.I. Taxi Ass'n*, 67 V.I. at 676. The standards for establishing criminal and civil contempt differ. *See In re Moorhead*, 63 V.I. at 693. Thus, in evaluating whether the Superior Court erred in holding Streibich in contempt, we must first determine the nature of the contempt sanctions it imposed in the Contempt Order. *See V.I. Taxi Ass'n*, 67 V.I. at 675 (citing *Latrobe Steel Co. v. United Steelworkers of Am., AFL-CIO*, 545 F.2d 1336, 1342 (3d Cir. 1976) (in determining the nature of a contempt sanction, a reviewing court is not bound by the trial court's characterization, but must independently determine its nature)). Once we have done so, we will then proceed to determine whether the Superior Court abused its discretion in holding Streibich in contempt.

### 1.  Civil Contempt Sanctions or Criminal Contempt Sanctions

¶ 25    Streibich only argues that the $500 sanction imposed upon him was criminal in nature; he does not dispute that the $2,200 sanction was civil in nature. In support of his argument, Streibich asserts: (i) the $500 sanction was "[a]n unconditional fine to the Clerk of the Court," (ii) "[i]t did not compensate Appellees for losses (and could not compensate them for losses because there is

*Streibich v. Kaplanek, et al.*    2025 VI 13
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 12 of 22

no evidence that they suffered any losses)," and (iii) "[h]e was not afforded an opportunity to avoid the $500 sanction, and indeed he complied by relocating his car before the motion to show cause [motion] was even filed."

¶ 26    In response, Kaplanek and the Strykers argue "that the record demonstrates that the subject order was one for civil contempt." In support of their argument, Kaplanek and the Strykers assert: (i) they "moved for a show cause hearing to force Appellant to abide by the Superior Court's Order to cease blocking the easement, not to punish him," or "[to] [p]ut [it] differently, Appellees moved the Superior Court to coerce Appellant to comply with the Court's Order," (ii) "the Superior Court clearly rendered a civil contempt judgment"—to wit, "[i]n its Order, the Superior Court outlined the distinctions between civil and criminal contempt, ... then analyzed the evidence under the civil contempt factors outlined by" this Court in *In re Meade*, and "ultimately found that Appellant satisfied the *Meade* factors" when he "intentionally blocked the easement" in violation of the clear and unambiguous order, and "his noncompliance was clear and convincing," and (iii) "the Superior Court coerced Appellant to comply with its order and compensate for wasted judicial resources by requiring a payment of $500 to the Court [and] then required Appellant to compensate Appellees for the legal fees accrued in defending their right of access by requiring Appellant to pay Appellees $2,200."

¶ 27    "[C]onclusions about the civil or criminal nature of a contempt sanction are properly drawn ... 'from an examination of the character of the relief.'" *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994) (quoting *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 636 (1988)); *accord Gompers* v. *Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911) ("It is not the fact of punishment but rather its character and purpose that often serve to distinguish between the two classes of cases[, civil contempt and criminal contempt]."). A contempt sanction is considered

*Streibich v. Kaplanek, et al.*
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 13 of 22

2025 VI 13

civil if it is "intended to enforce the rights of private parties [and] to compel obedience to orders and decrees, whereas the purpose of a criminal contempt sanction is the vindication of the dignity and authority of the court." *V.I. Taxi Ass'n*, 67 V.I. at 676 (quoting *In re M.R.*, 64 V.I. 333, 343-44 (V.I. 2016)) (internal quotation marks omitted); *see Int'l Union*, 512 U.S. at 827-28 ("Thus, a contempt sanction is considered civil if it 'is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.'") (quoting *Gompers*, 221 U.S. at 441 (internal quotation marks omitted)).

¶ 28    Furthermore, although fines payable to the court are typically criminal contempt sanctions, "it is well-established that a non-dischargeable monetary fine assessed in conjunction with a contempt finding may nevertheless be civil rather than criminal when the court imposes the fine to compensate itself for the harm it suffered from the contemnor's non-compliance." *In re Meade*, 63 V.I. at 685 (citing *Walters v. Walters*, 56 V.I. 471, 479 (V.I. 2012) ("[T]his Court may impose a fine as a sanction for civil contempt in order to compensate this Court for the costs associated with [the contemnor's] non-compliance.") (citation omitted)).

¶ 29    In the Contempt Order, the Superior Court did not expressly label the $500 sanction as either civil or criminal, and was silent as to the purpose of the sanction. Nevertheless, there is an abundance of support for the conclusion that the $500 sanction was civil in nature. First and foremost, the court—after analyzing the civil contempt factors set forth in *In re Meade*—explicitly held Streibich "in civil contempt of court."

¶ 30    In addition, Streibich does not dispute—and the record supports—that the contemporaneous $2,200 sanction imposed was remedial—to wit, to compensate Kaplanek and

*Streibich v. Kaplanek, et al.*                                    2025 VI 13
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 14 of 22

the Strykers for the losses they sustained, i.e., attorney's fees they incurred in litigating the contempt issue—and thus was civil in nature.[12] *See V.I. Taxi Ass'n*, 67 V.I. at 676.

¶ 31    Further, it is without a doubt that Streibich's noncompliance resulted in a waste of the court's time and resources, as well as those of Kaplanek and the Strykers, by having to address the contempt issue. Given that the court imposed the $2,200 sanction to compensate Kaplanek and the Strykers, it is certainly conceivable that the $500 sanction was imposed to compensate the court itself, and to coerce Streibich's compliance.

¶ 32    Lastly, Streibich points to absolutely no evidence in the record to support his claim that the $500 sanction was intended to punish him and thus was criminal in nature. *See V.I. Taxi Ass'n*, 67 V.I. at 676 (noting that a contempt sanction is considered civil if it is "intended to enforce the rights of private parties [and] to compel obedience to orders and decrees, whereas the purpose of a criminal contempt sanction is the vindication of the dignity and authority of the court"). In *In re Meade*, this Court held that "[s]ince the Superior Court referenced the minimum intent standard for civil contempt, and it is well-established that a court may hold an individual in civil contempt for past misconduct if the purpose is to compensate rather than to punish, this Court—**in the absence of any express findings to the contrary**—must presume that the Superior Court held [the contemnor] in civil contempt." 63 V.I. at 686 (emphasis added) (citing *Pro-Choice Network of W. New York v. Walker*, 994 F.2d 989, 994 (2d Cir. 1993) ("[T]here is a presumption in favor of finding civil as opposed to criminal contempt where there is some doubt as to the nature

---

[12] At the show cause hearing, Attorney Sauerwein—counsel for Kaplanek and the Strykers—represented to the court that "[he] believe[s] that contempt is appropriate, and [he] believe[s] that sanctions are appropriate, and we had asked for the fees associated for filing this motion and associated with this hearing, which we've estimated to be about $2,200, Your Honor, and we have an affidavit to show that and the cost expended." At the conclusion of the hearing, the court ordered, *inter alia*, that the court is "going to sanction Mr. Streibich in the amount [of] $2,200 in attorney's fees payable to the firm of Duensing -- I'm sorry, Duensing and Casner."

*Streibich v. Kaplanek, et al.*
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 15 of 22

2025 VI 13

of the contempt.") (internal quotation marks and citations omitted)); *see In re Sheesley*, 70 V.I. at 1028 ("As this Court has previously held, the Superior Court may permissibly impose a non-dischargeable monetary fine assessed in conjunction with a civil contempt sanction if it is for the purpose of compensating itself for the harm it suffered from the contemnor's non-compliance.") (citations omitted).

¶ 33    Hence, based on the foregoing—premised on the content, context and language of the court's order finding Streibich in civil contempt, plus the testimony and evidence deduced at the show cause hearing, and considered in conjunction with the recognized purpose and intent regarding the imposition of civil contempt sanctions, along with this Court's precedents—the reasonable conclusion is that the $500 sanction was a civil contempt sanction.

¶ 34    Having concluded that the monetary sanctions imposed in the Contempt Order were civil in nature, we will now consider whether there was sufficient evidence to support the Superior Court's decision to hold Streibich in civil contempt based on his violation of the April 29, 2024 Order.

## 2.  Sufficiency of Evidence to Support a Finding of Civil Contempt

¶ 35    Streibich argues that Kaplanek and the Strykers failed to meet their burden of proving to the court by clear and convincing evidence that he violated the April 29, 2024 Order via his parked vehicle and his May 30, 2024 letter to DPNR as claimed by Kaplanek and the Strykers. Streibich reasons that "[t]he temporary parking of a vehicle over a portion of the T57 ROW did not prohibit Appellees from using it for vehicular ingress and egress" and the "mere delivery of a letter to DPNR containing accurate information did not in any way block, obstruct, impede, or prevent Appellees from accessing the T57 R.O.W., as prohibited by the April 29, 2024 Order."

*Streibich v. Kaplanek, et al.*            2025 VI 13
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 16 of 22

¶ 36    On the contrary, Kaplanek and Strykers argue that "[Streibich] had the duty and ability to comply with the Order but failed to do so"—namely, they point out that Streibich "concede[d] that he parked his car 'in an area that falls partially within the portion of the easement where it enters the property ... '" and they assert that Streibich's "DPNR letter was intended to impede use of the easement."

¶ 37    "A party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *In re Meade*, 63 V.I. at 682; *see In re Najawicz*, 52 V.I. at 339 ("To prove civil contempt the court must find [by clear and convincing evidence] that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order.") (quoting *Harris v. Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995)). "The clear and convincing evidence standard ... requires evidence sufficient to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue, although [i]t is not necessary that the evidence be uncontradicted ... provided it carries conviction to the mind or carries a clear conviction of its truth." *In re V.I. Bar Ass'n Comm. on the Unauthorized Practice of Law*, 59 V.I. 701, 716 (V.I. 2013) (citations and internal quotation marks omitted); *see In re Suspension of Joseph*, 60 V.I. 540, 568 (V.I. 2014) ("The clear and convincing evidence standard ... requires evidence sufficient to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.") (citations and internal quotation marks omitted).

¶ 38    In the Contempt Order, the Superior Court found that Kaplanek and the Strykers "have proven by clear and convincing evidence that Defendant Streibich violated all three [civil

*Streibich v. Kaplanek, et al.*    2025 VI 13
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 17 of 22

contempt] factors." First, the court found that the April 29, 2024 Order is "clear and unambiguous [that] parking in the easement is prohibited." Second, the court found that "Streibich deliberately blocked, impeded, and prevented [the] Stryker[s] from accessing parcel 4-28" when Streibich "intentionally parked his vehicle upon the existing easement on the T57 map … such that it was impossible for any other vehicle to access Parcels 4-27 and 4-28." The court indicated that "[w]hat is even more convincing besides Streibich parking his car to purposely block any attempt to access the other parcels, is the letter dated May 30, 2024, written one day after being asked to move the car … [requesting] DPNR [to] refrain from processing any application that may be filed by Warren and Margaret Stryker or Charles Kaplanek, as owners of Parcels 4-27 and 4-28 … seeking an earth change permit to perform work on Parcels 4-22A, 4-22B, or 4-26" despite no such application having been filed by Kaplanek or the Strykers. Lastly, the court found that "even though Defendant moved the car within an hour of being notified by the Plaintiffs, it is still not enough to overcome the intentional violation of the court order."

¶ 39   In order to determine whether Streibich violated that April 29, 2024 Order, we must first examine the obligations imposed by that order. In that Order, the Superior Court, *inter alia*, ordered that "an implied easement exists over Parcel Nos. 4-22B, 4-22A, 4-25, 4-26, 4-27 and terminates at Parcel No. 4-28, based on the findings and conclusions of the accompanying Memorandum Opinion" and ordered Streibich to "IMMEDIATELY CEASE and [to be] PERMANENTLY ENJOINED from blocking, obstructing, impeding, or preventing in any manner the existing property owners of Parcel No. 4-27 and Parcel No. 4-28 or their successors in interest from traversing over and along the right of way as established upon PWD B9-31-T57 map."

*Streibich v. Kaplanek, et al.*          2025 VI 13
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 18 of 22

¶ 40    In the accompanying memorandum opinion, the Superior Court concluded—consistent with this Court's holding in *Streibich*[13]—that an implied easement exists over T57 ROW for ingress and egress by vehicle to Parcel Nos. 4-27 and 4-28. The court was explicit in delineating the location and scope of the implied easement and referenced a plethora of exhibits which included drawings and reports for further clarification. To put it simply, the April 29, 2024 Order was clear and unambiguously mandated that Streibich is prohibited from blocking, obstructing, impeding, or preventing Kaplanek (owner of Parcel No. 4-27) and the Strykers (owners of Parcel No. 4-28) from traversing over and along the easement that exists over T57 ROW for ingress and egress by vehicle to their properties.

### *Streibich's parked vehicle*

¶ 41    Based on the testimony and evidence presented at the show cause hearing, the proof of Streibich's noncompliance of the April 29, 2024 Order—via his parked vehicle—was clear and convincing. Most glaringly, Streibich himself admitted at the hearing that—even after knowledge of the April 29, 2024 Order—he continued to park his vehicle in a location where it was partially encroaching on T57 ROW and thereby blocking vehicle access to Parcel Nos. 4-27 and 4-28. Nevertheless, Streibich argues that there was no basis for the Superior Court to hold him in contempt—civil or otherwise—for several reasons. As explained below, Streibich's arguments are unpersuasive.

¶ 42    First, Streibich claims that a finding of contempt was not warranted because he "was off island when the Court's April 29, 2024 Order was docketed and did not return until late in the afternoon of May 15, 2024" and "[t]here was no evidence presented at the hearing that anyone

---

[13] *See supra*, note 6.

*Streibich v. Kaplanek, et al.*　　　　　　　2025 VI 13
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 19 of 22

contacted Streibich prior to May 29, 2024 to communicate a complaint about the location of his car." Yet, even after knowledge of the April 29, 2024 Order—and even after his return—Streibich took no action to comply with the court's order until the end of May. Specifically, at the show cause hearing, Streibich testified that he received the order on "approximately April 29" (J.A. 205) and that following that order, between April 29 and May 15, his vehicle remained parked at the same location, which he admitted meant that the "front of the car was probably on a portion of the easement," and he did not move his vehicle until May 29, 2024. (J.A. 200, 206, 222).

¶ 43　Second, Streibich further claims that a finding of contempt was not warranted because he did not believe that where he parked his vehicle violated the April 29, 2024 Order because the topography (i.e., rock wall, trees, brushes) of that portion of T57 ROW, as it currently exists, does not allow vehicles to traverse along and over for ingress and egress to Parcel Nos. 4-27 and 4-28. However, Streibich's interpretation of the April 29, 2024 Order—i.e., that he was permitted to park his vehicle in a location where it was partially encroaching on T57 ROW—is of no consequence to the Superior Court's contempt analysis. "This is because '[a] party's disagreement with how a court interpret[s] the law does not provide license to disobey a court order without consequence,' for to hold otherwise would cause our entire system of justice to collapse." *In re Sheesley*, 70 V.I. at 1025-26 (citation omitted).

¶ 44　Third, Streibich also claims that a finding of contempt was not warranted because he diligently attempted to comply with the April 29, 2024 Order by moving his parked vehicle once he was notified of its obstruction of T57 ROW, and, as a matter of fact, it was only a "temporary parking of [his] vehicle." However, Streibich's relocation of his parked vehicle—after he had already violated the April 29, 2024 Order—cannot be viewed as diligently attempting to comply with the court's order. The reasonably diligent thing to do, given the April 29, 2024 Order, would

*Streibich v. Kaplanek, et al.*                    2025 VI 13
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 20 of 22

have been for Streibich to not have parked his vehicle in a location that encroached on T57 ROW, not even partially, in the first place. Furthermore, the length of time Streibich left his parked vehicle at this location—well after his knowledge of the April 29, 2024 Order—indicated that it was not "temporary" as Streibich argues.

¶ 45    Thus, we conclude that the proof of Streibich's noncompliance of the April 29, 2024 Order was clear and convincing, and that Streibich did not diligently attempt to comply with the court's order in a reasonable manner. Therefore, the Superior Court did not abuse its discretion in holding Streibich in civil contempt for violating the April 29, 2024 Order via his parked vehicle.

### *Streibich's May 30, 2024 letter to DPNR*

¶ 46    While the parties dispute whether Streibich's May 30, 2024 letter DPNR violated the April 29, 2024 Order, the Superior Court did not expressly find that the letter in and of itself was such a violation. Instead, the court referenced Streibich's letter—while analyzing the second civil contempt factor as to Streibich's noncompliance of the court's order via his parked vehicle—to support its finding as to "why this [c]ourt believes the Defendant deliberately failed to comply with the [c]ourt's Order."

¶ 47    At this juncture, having resolved Streibich's appeal of the Contempt Order holding him in contempt and imposing sanctions against him, this Court is mindful that the principles of judicial restraint counsel against resolution of unnecessary issues. Accordingly, we will refrain from addressing this issue. *Cf. George v. People of the V.I.*, 69 V.I. 553, 561 (2018) ("Though susceptible to various definitions depending on the context in which the term is used, perhaps the most commonly used definition of judicial restraint is 'the principle that, when a court can resolve a case based on a particular issue, it should do so, without reaching unnecessary issues.'") (quoting Black's Law Dictionary 924 (9th ed. 2009)); *Morse v. Frederick*, 551 U.S. 393, 431

*Streibich v. Kaplanek, et al.*                    2025 VI 13
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 21 of 22

(2007) (Breyer, J., concurring in part and concurring in judgment) (the "cardinal principle of judicial restraint" is that "if it is not necessary to decide more, it is necessary not to decide more") (citation omitted)); *Whitehouse v. Ill. C. R. Co.*, 349 U.S. 366, 372-73 (1955) (observing that in the face of "perplexing questions" that are ancillary to the underlying dispute, "[t]heir difficulty admonishes us to observe the wise limitations on our function and to confine ourselves to deciding only what is necessary to the disposition of the immediate case.").

### D. Whether the Superior Court Erred by Expanding the April 29, 2024 Order to Prohibit Streibich from Temporarily Parking on His Own Property

¶ 48    This argument goes to the scope and the terms of the permanent injunction in the April 29, 2024 Order and is therefore outside the reach of Streibich's instant appeal of the Contempt Order and is therefore improperly before this Court.[14] Accordingly we express no opinion on it here.

### III. CONCLUSION

¶ 49    The Superior Court did not abuse its discretion in holding Streibich in contempt and the Superior Court did not err in imposing civil contempt sanctions against Streibich in the amount of $500 (payable to the Superior Court of the Virgin Islands, Cashier's Office) and $2,200 (payable to the Law Offices of Duensing & Casner). Thus, we affirm the Superior Court's Contempt Order.

**Dated this 4ᵗʰ day of June, 2025.**

BY THE COURT:

**HAROLD W.L. WILLOCKS**
**Associate Justice**

---

[14] Not to mention that Streibich's appeal of the April 29, 2024 Order (SCT-CIV-2024-0036) is still pending before this Court and more appropriately suited to address any argument challenging the merits of the April 29, 2024 Order.

*Streibich v. Kaplanek, et al.*
S. Ct. Civ. No. 2024-0043
Opinion of the Court
Page 22 of 22

2025 VI 13

**ATTEST:**

**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**
**By:** _____

    **Deputy Clerk II**
**Dated:** ___6-7-2025___